IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| USHEALTH GROUP, Inc. and USHEALTH ADVISORS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>KEMPER CORPORATION and RESERVE NATIONAL INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 4:19-cv-578<br><br>JURY TRIAL DEMANDED |

**ORIGINAL COMPLAINT**

COME NOW Plaintiffs USHEALTH Group, Inc. ("USHEALTH") and USHEALTH Advisors, LLC. ("Advisors"). USHEALTH and Advisors are hereinafter collectively referred to as "Plaintiffs" and file their Original Complaint against Kemper Corporation ("Kemper"), and Reserve National Insurance Company ("Reserve National"). Kemper and Reserve National are hereinafter collectively referred to as "Defendants," and Plaintiffs would respectfully show as to such Defendants the following:

**I. THE PARTIES**

1. USHEALTH is an insurance holding company as that term is generally understood in the Texas Insurance Code, incorporated in the state of Delaware with its principal office located in Fort Worth, Tarrant County, Texas.

2. Advisors is a Texas limited liability company and a licensed insurance agency, which is a wholly owned subsidiary of USHEALTH, with its principal place of business in Fort Worth, Tarrant County, Texas.

3. Defendant Kemper Corporation is a Delaware corporation duly formed and existing under and by virtue of the laws of the state of Delaware. Plaintiffs request Kemper be cited to appear and answer herein. Kemper may be served through its registered agent, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. Defendant Reserve National Insurance Company is an Oklahoma insurance company, duly formed and existing under and by virtue of the laws of the state of Oklahoma. Plaintiffs request Reserve National be cited to appear and answer herein. Reserve National may be served through its registered agent, the Corporation Company, 1833 S Morgan Road, Oklahoma City, Oklahoma 73128.

## II. JURISDICTION AND VENUE

5. Plaintiffs bring this action under the common law and statutes of the State of Texas to recover for a breach of contract and tortious interference with contractual and business relationships of Plaintiffs committed on behalf of Defendants by certain agents, officers or vice principals of Defendants, including but not limited to Duncan B. Broussard ("Broussard").

**6.** Jurisdiction is proper in this Court under 28 U.S.C § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7. Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events and breach of legal duties and resulting damages to Plaintiffs arose in whole or in part in Tarrant County, Texas.

8. The Court has personal jurisdiction over Reserve National because it is a non-resident insurance company, licensed to do business in Texas.

9. Kemper is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial District, including: (A) contracting with USHEALTH; and (B) regularly doing or

soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents.

## III. NATURE OF ACTION AND FACTUAL BACKGROUND

10. This Complaint seeks to recover consequential damages sustained by Plaintiffs as a result of Defendants' breach of contract with USHEALTH and Defendants' tortious interference with Advisors' contracts and business relationships with certain licensed insurance agents, as well as Defendants' misappropriation of Plaintiffs' confidential information and trade secrets. Plaintiffs will also demonstrate their entitlement to the recovery of punitive and/or exemplary damages from Defendants as a result of the intentional torts committed by Duncan Broussard ("Broussard, with the knowledge of vice principals of Defendants or otherwise ratified by vice principals of Defendants.

11. In this regard, Kemper entered into a confidentiality and non-disclosure agreement with USHEALTH, on October 3, 2018 (the "Agreement"), whereby Kemper agreed, among other things, that neither it nor its subsidiaries, including Reserve National, would target, solicit, and contract with any licensed insurance agent insurance agent under contract with Advisors for a period of one-year.

12. Before the execution of the Agreement by Kemper, Broussard executed a contract on February 24, 2016 with Advisors entitled "USHEALTH Advisors Agent Agreement" ("Agent Agreement"). with Advisors, under which Broussard became an exclusive, career-captive insurance agent of Advisors. Thereafter and before Kemper's execution of the Agreement, Broussard was promoted by Advisors on May 5, 2017 to a career-captive position of high trust, management and leadership at Advisors.

13. Under the terms of his Agent Agreement with Advisors, Broussard was an insurance agent of Advisors with a resident insurance agent's license in the state of Georgia and

non-resident insurance agent licenses in Alabama, Arizona, Colorado, Florida, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Michigan, Missouri, Mississippi, Montana, North Carolina, Nebraska, Nevada, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia and Wyoming. As such, Broussard was engaged in the business of selling insurance coverage for the insurance company subsidiaries of USHEALTH on a broad, national basis. Moreover, Broussard's management and leadership position at Advisors included assisting in the training other Advisors' agents to sell the insurance products of the insurance company subsidiaries of USHEALTH in various states, including those in which Broussard was licensed.

14. In his capacity as a licensed insurance agent of Advisors with managerial responsibilities, Broussard was provided and had access to confidential and proprietary information and trade secrets of Plaintiffs.

15. Despite the Defendants' contractual duties and obligations under the Agreement referenced in paragraph 11 above, Defendants, with prior knowledge of Broussard's Agent Agreement and legal duties thereunder, his managerial position with Advisors and his access to and possession of Plaintiffs' confidential and proprietary information and trade secrets, directly targeted, intentionally and specifically solicited Broussard to terminate his contract with Advisors, contract with Reserve National as an insurance agent with managerial authority to directly compete with Plaintiffs on a national basis.

16. In direct response to Defendants' actions and inducements, Broussard terminated his Agent Agreement with Advisors on June 18, 2019 and contracted with Defendants as an insurance agent in some or all of the states in which Broussard holds an insurance agent license for the express purposes of competing in the national marketplace with Plaintiffs.

17. Before terminating his Agent Agreement with Advisors, Broussard breached legal duties owed to Plaintiffs confiscated and removed Plaintiffs' confidential and proprietary information.

18. Broussard's Agent Agreement with Advisors in pertinent part provides as follows with respect to confidential information and trade secrets of Plaintiffs:

> "All insurance coverage, association membership and all other products, policies, benefits and services sold by Agent hereunder are and shall remain the property of the applicable Carrier. Moreover, the customers, consumers and/or clients to whom such coverage, policies, products, benefits and services were sold **are and shall remain the confidential customers, consumers and clients of USHEALTH Advisors and Carriers**." [emphasis added].

* * *

> "Agent does hereby acknowledge, agree and accept that the Trade Secret Information as used in this Agreement includes, but is not limited to: **Agent's, Leads and all information related thereto, other customer or client lists, including names, addresses, telephone numbers, and amounts and types of insurance**; expiration and renewal dates of policies; lists of business leads, claims histories; due dates of premium and amounts thereof; and statements of monthly accounts submitted to Agent by USHEALTH Advisors. **All Trade Secret Information furnished to Agent shall be and remain the property of USHEALTH Advisors and Carriers.** Agent acknowledges that USHEALTH Advisors derives independent economic value from the Trade Secret Information and from its not being generally known to the public or to other persons who can obtain economic value from its disclosure**. Agent will not during or after the term of this Agreement divulge, make known, or otherwise make use of any Trade Secret Information for any purpose, including, but not limited to, except as expressly authorized by USHEALTH Advisors in writing, the solicitation of business from any person or entity**." [emphasis added].

19. Broussard's Agent Agreement with Advisors in pertinent part also provides as follows with respect to the Broussard's contractual duty not to solicit customers and agents of Advisors after the termination of his Agent Agreement:

> "Agent agrees that during the term of this Agreement, and for a period of thirty-six (36) months following the date of its termination for any reason, **Agent and Agent's employees and agents will not, directly or indirectly, contact, communicate or meet with any of the USHEALTH Advisors or insurance Carrier policyholders for the purpose of attempting or discussing a rewriting, canceling, lapsing or replacing such USHEALTH Advisors or insurance Carrier policies or coverage with a new policy or coverage from another insurance company; and Agent will not at any time following termination of the Agreement rewrite, cancel, lapse or replace any USHEALTH Advisors or insurance Carrier policy with a policy from another company**. Also, Agent agrees that during the term of this Agreement, and for a period of thirty-six (36) months following the date of its termination for any reason, Agent and Agent's employees and agents will not, directly or indirectly, contact, communicate or meet with any of the USHEALTH Advisors or insurance Carrier association members or product or service holders for the purpose of attempting or discussing a rewriting, canceling, lapsing or replacing such USHEALTH Advisors or Carrier memberships, products or services with a new membership from another association or products and services of another company; and Agent will not at any time following termination of the Agreement rewrite, cancel, lapse or replace any USHEALTH Advisors or Carrier memberships, products or services with a new membership from another association or products and services of another company.
>
> In addition, **Agent will not at any time after such termination attempt to solicit or recruit, directly or indirectly, any sub-agent of USHEALTH Advisors away from it and to any other individual or entity which is in the same or similar business of USHEALTH Advisors or Carriers.** In addition, for a period of thirty six (36) months following termination of this Agreement for any reason, neither Agent nor Agent's employees and agents will directly or indirectly contact, communicate or meet for any reason or purpose with any USHEALTH Advisors or insurance Carrier policyholder with respect to whom Agent has received First Year Commissions, Renewal Commissions, or other fee, or compensation during the term of this Agreement." [emphasis added].

20. With the knowledge, consent and either direct or implied consent and approval of Defendants, Broussard used such confidential and proprietary information to directly target, intentionally and specifically solicit other contracted insurance agents of Advisors, including but not limited to Kellie Clark, Isaac Crumbly, Stephanie Diamond, Kevin Griffith, Robert Hilton,

Amanda Holbrook, Samuel Kibe, Nirinya Kummatool, and Steven Taylor (the "Broussard Solicited Agents").

21. Each of the Broussard Solicited Agents of Advisors was urged to terminate their respective agent agreements with Advisors and contract as an insurance agent of Defendants.

22. As a direct result of the actions of Broussard and Defendants, each of the Broussard Solicited Agents has contracted with Defendants to compete with Plaintiffs on a national basis.

23. The campaign of Broussard and Defendants to target and improperly solicit other contracted agents of Advisors to terminate their contracts with Advisors and contract with Defendants is ongoing.

24. In the furtherance of this campaign to raid the contracted insurance agents of Advisors, Broussard improperly accessed and used (a) Advisors' confidential, proprietary, and highly sensitive business information and Advisors' goodwill and business relationships for his own benefit and the benefit of Defendants; and (b) confidential information to solicit Advisors' customers and agents (both before and following his departure from Advisors).

25. The purpose of the aforementioned covenants was to protect Advisors' business goodwill, trade secrets, and confidential information. The limitations set out in the covenants as to time and scope of activity to be restrained are reasonable and do not impose a greater restraint than is necessary to protect Advisors' business goodwill, trade secrets, and confidential information. Moreover, all these covenants survived termination of the underlying Agent Agreement.

26. On information and belief, before and subsequent to the termination of the Agent Agreement, and continuing to this day, Broussard, acting at the direction and/or for the benefit of Reserve National and with its knowledge and consent, engaged in a willful attempt to misappropriate confidential trade secret information from Advisors, including agent lists and

identities (as well as their productivity), client lists, and product and sales knowledge, all for the express purpose of utilizing the same to recruit Advisors' agents to sell insurance products through Reserve National and competing carriers, and to convert Advisors' clients to competing insurance carriers. This was done for the pecuniary gain of Defendants, by wrongfully converting Advisors' agents and clients to Defendants, in derogation of Kemper's legal duties under the Agreement and Defendants' common law legal duties owed to Plaintiffs.

27. Moreover, on information and belief, Broussard's conduct as described above was conducted with the express knowledge direction, agreement, consent and/or approval of Defendants, such that Defendants engaged in a civil conspiracy to not only breach Broussard's Agent Agreement, but also to tortiously interfere with existing contractual rights and business relationships with and between Advisors and the Broussard Solicited Agents.

28. In short, Defendants engaged in unscrupulous, predatory, and unfair business practices that have caused Plaintiffs to suffer significant consequential and ongoing monetary damages. Specifically, and in direct violation of the express terms of the Agent Agreement, Defendants have engaged in scurrilous recruitment tactics aimed directly at Advisors' clients, as well as the licensed, trained agents in whom Advisors had invested heavily.

## IV. <u>CAUSES OF ACTION</u>

**COUNT I: Breach of Contract**

29. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

30. The Agreement is a valid and enforceable contract.

31. USHEALTH performed or tendered performance according to the terms of the Agreement.

32. Defendants knowingly and intentionally breached the Agreement, as set forth above.

33. As a direct result of Defendants' breach of the legal duties owed USHEALTH under the Agreement, Plaintiffs suffered actual and compensatory damages, , together with prejudgment interest and attorney's fees as allowed by applicable law.

**COUNT II: Tortious Interference with the Business Relationships and the Contractual Relationships**

34. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

35. Defendants' aforementioned conduct constitutes a tortious interference with the business relationship with and between Advisors, its contracted agents, its clients, and the insurance carriers that Advisors represents.

36. Defendants acted with specific intent and purpose and with full knowledge that their actions would or likely would harm and damage Defendants.

37. Defendants' actions, conduct, and course of conduct complained about herein were without legal privilege or justification.

38. Plaintiffs have not only sustained actual damaged as a result of such knowing and intentional actions, conduct and course of conduct such as to warrant not only the recovery of the actual damages Plaintiffs have and will continue to suffer and sustain in the future, but also sufficient to warrant the imposition by the jury of an award of punitive and/or exemplary damages in favor of Plaintiffs and against Defendants.

**COUNT III: Unfair Competition**

39. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

40. Defendants' aforementioned conduct constitutes willful common law unfair competition.

41. Plaintiffs have sustained not only actual damaged as a result of such knowing and intentional actions, conduct and course of conduct such as to warrant not only the recovery of the

actual damages Plaintiffs have and will continue to suffer and sustain in the future, but also sufficient to warrant the imposition by the jury of an award of punitive and/or exemplary damages in favor of Plaintiffs and against Defendants.

**COUNT IV: Misappropriation of Trade Secrets**

42. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

43. Plaintiffs would show that their client and agent lists, including lists of the identity of agents and their sales production and sales effectiveness, and the identity of all individuals who applied for and/or were issued insurance by the insurance carriers that Advisors represents, as well as the applications for insurance submitted by clients and potential clients of Advisors, are not only confidential, proprietary trade secrets of Plaintiffs, but Plaintiffs derive independent economic value from the confidentiality of such client rosters. Further, under the terms of the Agent Agreement, Broussard was expressly prohibited from utilizing such information for pecuniary gain. Plaintiffs would show that Defendants have wrongfully misappropriated information regarding the identity of Advisors' clients and agents and have used such information to directly contact, solicit and recruit such individuals or their business. Defendants' actions, conduct and course of conduction is ongoing to the detriment and damage of Plaintiffs.

44. On information and belief, Broussard has provided Reserve National with the proprietary trade secret information, which all Defendants have misappropriated and use to their benefit and Plaintiffs' detriment.

45. As a result of Defendants' willful retention of, and actual or threatened or inevitable disclosure or, Plaintiffs' confidential information, Plaintiffs have sustained not only actual damaged as a result of such knowing and intentional actions, conduct and course of conduct such as to warrant not only the recovery of the actual damages Plaintiffs have and will continue to suffer

and sustain in the future, but also sufficient to warrant the imposition by the jury of an award of punitive and/or exemplary damages in favor of Plaintiffs and against Defendants. Plaintiffs have suffered and will continue to suffer damages, all for which Plaintiffs herein sue Defendants.

**COUNT V: Civil Conspiracy**

46. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

47. Defendants, in conjunction with Broussard, acted together and conspired to (a) tortiously interfere with the business and contractual relationship between Advisors and its agents and the insurance carriers it represents. Defendants have conspired together and with other agents, insurance agencies, and insurance companies to wrongfully induce and convert Advisors' agents and clients to competing insurance carriers and agencies, and to use Broussard's knowledge of Advisors' proprietary and confidential leads, client lists, agent lists, product and marketing knowledge, and other confidential information, for the financial gain of Defendants, all to the detriment and damage of Plaintiffs; (b) engage in unfair competition; (c) misappropriate trade secrets; and (d) violate the Texas Insurance Code.

48. By acting together, Defendants accomplished and continue to work toward accomplishing their improper objectives of bringing about economic harm to Advisors. Under their objectives or course of action, Defendants committed one or more unlawful and overt acts with knowledge that their conduct would cause harm to Advisors. Defendants' conspiracy is unlawful and have caused damages to Plaintiffs, all for which Plaintiffs hereby sue.

**COUNT VI: Knowing, Willful, and Malicious Misconduct**

49. Plaintiffs repeat and reallege all previous allegations as if set forth in full herein.

50. Defendants knowingly, willfully, and wantonly engaged in the conduct set forth hereinabove, and accordingly are liable for additional damages as provided in Texas Business & Commerce Code Section 17.50(b)(1) and Texas Insurance Code Section 541.152(b).

51. Plaintiffs would further show that Defendants' conduct, as described hereinabove, was willful and malicious in nature. Accordingly, Plaintiffs hereby exercise their statutory and common law right to recovery of exemplary and/or punitive damages as a result of Defendants' willful and malicious conduct.

52. Plaintiffs, therefore, sue Defendants for such punitive and/or exemplary damages as may be established by the evidence and justified by the law.

## V. CONDITIONS PRECEDENT

53. For each cause of action alleged herein, all conditions precedent have been performed by Plaintiffs or have occurred.

## VI. JURY DEMAND

54. Plaintiffs demand a trial by jury.

## VII. REQUEST FOR RELIEF

55. WHEREFORE, premises considered, Plaintiffs request that judgment be entered in their favor against Defendants and that they be granted the following relief:

A. Judgment against all Defendants for actual and consequential damages, including treble and punitive damages, pre- and post-judgment interest, attorney's fees, expenses, and costs (as allowed by statute, common law, and contract);

B. Such other and further relief as requested herein, or to which Plaintiffs may be entitled.

Dated: July 24, 2019

Respectfully submitted,

______________________________

R. Casey O'Neill
State Bar No. 24079077
oneillc@oneill-jacksonlaw.com
**O'NEILL & JACKSON**
300 Burnett Street, Suite 210
Fort Worth, Texas 76102
817/878-3333
817/878-3672 (facsimile)

***ATTORNEYS FOR PLAINTIFFS USHEALTH GROUP, INC. AND USHEALTH ADVISORS, LLC***